UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY MOORE,

       Plaintiff,                   CASE NUMBER: 2:07-cv-14640
                                            HONORABLE VICTORIA A. ROBERTS

v.

UNITED STATES OF AMERICA,

       Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER
AND FOR LEAVE TO RETAIN EXPERT WITNESS**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Modify Scheduling Order and for Leave to Retain an Expert Witness (Doc. #45). Plaintiff Gregory Moore ("Moore") seeks an extension of time to add a medical expert as a witness who is board certified in the specialty of family practice. Plaintiff's motion is **GRANTED**.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

    **A.    Gregory Moore**

Moore is a U.S. citizen incarcerated at the Federal Correctional Institution ("FCI") in Milan, Michigan. In October 2010, Moore filed this action claiming employees of the Federal Bureau of Prisons, including Dr. William Malatinsky ("Dr. Malatinsky"), negligently refused to recommend surgery for Moore's left shoulder and right ankle. (Compl. ¶ 10).

    **B.    Dr. Malatinsky**

Dr. Malatinsky is a medical doctor who is a board certified family practitioner and is

1

employed by the Federal Bureau of Prisons as the clinical director for the Milan FCI.

  **C.**  **Procedural History**

  On October 30, 2007, Moore filed a Complaint against the United States of America, the warden of FCI Milan (C. Eichenlaub), and the clinical director of FCI Milan (Dr. Malatinsky). On October 22, 2008, Moore's claims against Defendants Eichenlaub and Malatinsky were dismissed for failure to state a claim upon which relief can be granted. Moore is suing the United States under the Federal Tort Claim Act ("FTCA"), §§ 1346(b) and 2671-80, for the negligent acts of its officers and employees. (Compl. ¶ 12).

  On October 9, 2009, this Court entered a scheduling order (Scheduling Order Phase I) specifying the discovery deadline. However, on March 18, 2010, the scheduling order was modified by stipulation of the parties, changing the discovery cut-off date from March 9, 2010 to June 25, 2010. Despite this cut off date, the parties mutually agreed to continue discovery.

  On July 21, 2010, Moore's counsel took the deposition of Dr. Malatinsky. The deposition revealed that Dr. Malatinsky denied Moore ankle surgery based upon an independent exercise of his medical judgment regarding the likelihood of success of the proposed surgical procedure. On August 23, 2010, Moore filed this Motion to modify the scheduling order. He claims that he did not know, until Dr. Malatinsky was deposed, that Dr. Malatinsky exercised independent medical judgment in denying his surgery requests. He now wants to retain an expert witness who is board certified as a family practitioner to challenge Dr. Malatinsky's medical judgment.

**II.**  **APPLICABLE LAW AND ANALYSIS**

  "A schedule may be modified only for good cause and with the judge's consent."

Fed.R.Civ.P. 16(b)(4). In deciding whether to grant a motion for modification, the Court must consider the moving party's diligence in attempting to meet the requirements of the existing order and the potential prejudice to the non-moving party. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2005).

### A. Moore Reasonably Believed Orthopedic Doctors Denied Him Treatment

Moore says his failure to retain an expert medical witness was because he reasonably believed that Dr. Malatinsky followed the recommendations of the on-site orthopedic doctors in denying him treatment for his shoulder and ankle injuries. In support of his claim, Moore explains that at the time he filed his Notice of Intent to Sue and Declaration of Merit, the orthopedic consultation reports available to him did not show evidence Dr. Malatinsky exercised medical judgment in denying him the requested treatment; they showed only the on-site orthopedic doctors' recommendations. Based on the reports, Moore retained an expert medical witness, board certified as an orthopedic surgeon, to testify that the orthopedic doctors contracted by the United States negligently failed to recommend surgery for Moore.

Moore claims that it was only after Dr. Malatinsky's deposition that the need for an expert witness to rebut Dr. Malatinsky's testimony arose. Not only did the deposition reveal that Dr. Malatinsky denied Moore's requests based on his opinions as a family practitioner, but also that Dr. Malatinsky knew the on-site orthopedic doctors were limited in their ability to recommend surgery for inmates. Moore wants to retain a board certified family practitioner to testify that Dr. Malatinsky was negligent in denying Moore surgery because he was not qualified to make such decisions as a family practitioner.

The United States requests this motion be denied because it believes Moore knew or

should have known that Dr. Malatinsky exercised his independent medical judgment in refusing Moore's requests and, therefore, should have retained an expert witness sooner. In support, the United States explains that (1) Moore directly accused Dr. Malatinsky of denying him medical treatment for his shoulder and ankle in a previous administrative tort claim; (2) the complaint in this action alleged that Dr. Malatinsky refused him necessary medical care; (3) Moore's deposition stated he was suing Moore for medical malpractice; (4) Dr. Malatinsky had previously refused to allow Moore to see on-site orthopedic doctors due to his diabetic conditions; and (5) the opinion in a previous lawsuit brought by Moore against a clinical director at another FCI stated that the clinical director made all medical decisions.

Although there is a question as to whether Moore had reason to know Dr. Malatinsky was exercising his own judgment in determining treatment, Moore's explanations for not retaining an expert witness sooner are reasonable and provide good cause.

Moore's complaint shows that he was under the impression Dr. Malatinsky and Warden Eichenlaub negligently relied on an outdated report as reason to deny his requested treatment. An orthopedic consultation report from May 9, 2002 stated Moore "will need a total shoulder replacement, and an ankle fusion . . . [but not] at this time." (Moore Reply to Defs. Response, Exh. A). It is Moore's contention that a subsequent consult on July 29, 2004 recommended he see another orthopedic doctor to determine his candidacy for surgery. (Moore Reply to Defs. Response, Exh. B). However, when Moore asked about the report, Dr. Malatinsky claimed it was not in his file. (Moore Reply to Defs. Response, Exh. D, pp.40-41). Consistent with Moore's belief, Warden Eichenlaub sent a letter to United States Senator Carl Levin explaining that Moore was not recommended for surgery "due to his young age and [the] stage of his

4

disease [ankle and shoulder injuries]" in response to the administrative claim Moore filed before this action. (Moore Reply to Defs. Response, Exh. E). Therefore, information uncovered could support a conclusion that United States' employees were negligent in not keeping their medical records updated and for failing to rely on the most current orthopedic consultation reports. Moore may not have had a reason to know Dr. Malatinsky was exercising independent medical judgment.

The decision on Moore's prior lawsuit against another clinical director was under a different standard, and is not dispositive on this motion. In *Moore v. Samolia*, United States District Court for the Central District of Illinois, case no. 04-1151, the court analyzed Moore's previous lawsuit under the Eighth Amendment "deliberate indifference" standard, not the negligence "reasonable care" standard. Although the court explained that the clinical director of a particular facility is responsible for inmate medical treatment, and that the clinical director exercises judgment in determining what treatments to grant, it is not dispositive here because of the differing standards.

Moore's deposition, although a close call, also indicates that he did not know or have reason to know Dr. Malatinsky exercised independent judgment; his answers show he believed Dr. Malatinsky relied on outdated orthopedic consultation reports.

The United States' argument that Moore's medical records show that Dr. Malatinsky exercised medical judgment in denying Moore's requests for surgical treatment for his ankle and shoulder, is not persuasive. Dr. Malatinsky referred Moore to an on-site orthopedic doctor in 2005 and 2010, even though he allegedly refused to "seriously consider an ortho referral" unless his diabetes was "under good control for a period of time." (Defs. Response to Motion to

5

Modify Scheduling Order and for Leave to Retain Expert Witness, pp. 7-8; Moore Reply, Exhs. F & G). However, Moore was still sent to orthopedic doctors even though he had not met his goals, and there was no mention of Moore's diabetes in his orthopedic consultation reports. Dr. Malatinsky's inconsistent behavior supports Moore's belief that Dr. Malatinsky followed the orthopedic doctors' recommendations and did not exercise independent medical judgment.

Further, Moore's Affidavit of Intent to Sue and Declaration of Merit show he did not know or have reason to know that Dr. Malatinsky was exercising independent judgment in denying his requests for surgery. The affidavit was signed by a board certified orthopedic surgeon, Dr. Alexander Moskwa, Jr. ("Dr. Moskwa"), not a board certified family practitioner like Dr. Malatinsky. The medical consultation reports discussing Moore's shoulder and ankle injuries were generated by FCI Milan's on-site doctors (Moore Motion to Modify Scheduling Order and for Leave to Retain Expert Witness, Exh. A), and the warden specifically stated in a letter to the Senator that the orthopedic reports were consistent with the decision to deny Moore his requested relief (Moore Reply to Defs. Response, Exh. E). Therefore, Moore had reason to believe that he was not getting surgery because of the on-site orthopedic doctors' conclusions.

The Court finds that Moore's explanations for not seeking an expert medical witness during discovery are reasonable and provide good cause.

  **B.**  **Government Is Not Prejudiced By Granting This Motion**

The United States does not contend it would be unduly prejudiced by an extension of discovery. It argues that allowing Moore to add another expert witness would prolong the litigation and subject the United States to further litigation expenses. While these complaints may be valid, they would have arisen even if Moore had filed his request in advance of the

deadline. Further, Moore would be prejudiced if he was not allowed to continue discovery because the Government has continued to send Moore medical evaluations and gather evidence to support its case after the stipulated cut-off date. (*See* August 16, 2010 consultation report, attached to Defs. Response, Exh. 27).

## II. CONCLUSION

Moore's motion is **GRANTED**.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 29, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 29, 2010.

s/Linda Vertriest
Deputy Clerk