UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GREGORY MOORE,**

    **Plaintiff,**

                                      **CASE NO: 2:07-cv-14640**
v.                                               **HONORABLE VICTORIA A. ROBERTS**

**UNITED STATES OF AMERICA,**

    **Defendant.**
_____/

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment. Because material issues of fact exist, summary judgment is **DENIED**. However, several of Plaintiff's claims are **DISMISSED** without prejudice for failure to exhaust.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Gregory Moore ("Plaintiff") is a federal inmate housed at the Federal Correctional Institution in Milan, Michigan ("FCI-Milan") since June 29, 2004, and in the custody of the Bureau of Prisons ("BOP") since September 23, 1996. (R. 58-4). Prior to FCI-Milan, Plaintiff was incarcerated at FCI-Pekin. (*Id.*)

Plaintiff has a number of health issues, including degenerative joint disorder ("DJD") in his left shoulder and right ankle, obesity, hypertension, asthma, Type II diabetes, and diabetes-related conditions. (R. 57-11 at 2). Plaintiff was diagnosed with DJD in the 1990s and his case is considered severe; he frequently experiences swelling, arthritis, intense

1

pain, and bone to bone friction. (R. 57-3 at 2-3). DJD has also greatly limited Plaintiff's range of motion and his ability to lift, walk, or stand. (*See* R. 57-2 at 2-6; R. 57-7, Pl. Depo. at 48-50).

Despite being told by BOP consulting physicians as early as August 1999 that his condition requires orthopedic surgery, including ankle surgery and "a total shoulder replacement," (R. 57-2 at 5), up until now Plaintiff has received only conservative, non-surgical treatments. Such treatment has not alleviated Plaintiff's pain. On July 28, 2004, Plaintiff brought suit against the staff of FCI-Pekin, alleging that their regimen of conservative treatment violated the Eighth Amendment prohibition against deliberate indifference to health care needs. (R. 58-17, *Moore v. Samolia*, No. 04-1151 (C.D. Ill. Nov. 28, 2005). Summary judgment was granted to the defendant. (*Id.*)

### A.   Ankle Evaluation

After his transfer to FCI-Milan in June 2004, Plaintiff received his first medical evaluation on July 19, 2004. (R. 58-18, Malatinsky Decl. at 2). Plaintiff was evaluated by Dr. Paul Harvey, then clinical director of FCI-Milan. Dr. Harvey observed swelling in Plaintiff's ankle and referred him to BOP consultant orthopedist Dr. Kanwaldeep Sidhu. (R. 57-3 at 2).

Dr. Sidhu examined Plaintiff's ankle on July 29, 2004. (R. 57-4, Malatinsky Depo. at 116-17). Dr. Sidhu, who is licensed as an orthopedist but lacks permission to perform surgery at FCI-Milan, concluded that Plaintiff suffered severe DJD; he recommended that Plaintiff be referred to an outside orthopedic surgeon who, unlike Dr. Sidhu, was authorized to evaluate Plaintiff's surgical treatment options. Dr. Sidhu made an accompanying notation in Plaintiff's medical file that read, "plz refer to an outside foot/ankle orthopedis[t] to see if

2

pt [patient] is a candidate for ankle fusion." (R. 57-3 at 2).

Between July 2004 and February 2007, Plaintiff never received orthopedic surgery on his ankle or a referral to an orthopedic surgeon. Despite complaining about his DJD symptoms no less than 18 times, Plaintiff was also denied all forms of treatment for his ankle besides conservative therapies of soft shoes, a walking cane, occasional pain relievers, and food and work-related accommodations. (R. 58-22). These treatment decisions were made by Dr. William Malatinsky, a family practice doctor who succeeded Dr. Paul Harvey as clinical director for FCI-Milan around August 2004. (R. 57-4 at 15). Dr. Malatinsky was also chairperson for the FCI-Milan Utilization Review Committee ("URC"), which must approve all inmate requests for specialty medical treatment. (*Id.* at 22-24).

Although Dr. Malatinsky is not an orthopedic specialist, Dr. Malatinsky denied Plaintiff's requests for ankle surgery based on his conclusion that Plaintiff was not a candidate because of his age and diabetes condition. (*Id.* at 72-78). Dr. Malatinsky opined that ankle surgery on Plaintiff would pose a risk without many benefits. (*Id.* at 62-65). Despite Dr. Sidhu's recommendation that Plaintiff receive an immediate surgical referral, Dr. Malatinsky told Plaintiff that surgery was appropriate "in the future, not now," and stated that this view was in accord with all of the other medical consultations that Plaintiff received. (R. 57-6). This was incorrect. (R. 57-3 at 2). When Plaintiff asked Dr. Malatinsky why he ignored Dr. Sidhu's recommendation for a surgery referral, Dr. Malatinsky said there was no recommendation from Dr. Sidhu in Plaintiff's medical file. (R. 57-7 at 40-42). This was also incorrect. (R. 57-3 at 2).

However, Plaintiff persisted in his efforts to obtain surgery clearance, and Dr. Malatinsky eventually told Plaintiff that he would consider referring him to an orthopedic

3

surgeon if he achieved better management of his diabetes. (R. 58-18, Malatinsky Decl. at 15-23).

### B.  Shoulder Evaluation

Between October 2004 and May 2005, Plaintiff spoke to the FCI-Milan medical staff about his DJD approximately eight times, complaining of intense ankle as well as shoulder pain. (*Id.*). In June 2005, Dr. Malatinsky arranged for Plaintiff to have an initial shoulder evaluation; Dr. Sidhu examined Plaintiff on June 30, 2005. (R. 58-22). He concluded that Plaintiff would "eventually need total shoulder arthroplasty," but noted that as a 46-year old, Plaintiff was still "very young" for a shoulder replacement procedure. (*Id.*) Unlike with regard to Plaintiff's ankle, Dr. Sidhu did not recommend that Plaintiff receive an immediate surgical referral.

### C.  Continuing Complaints

Plaintiff did not receive any other orthopedic consultations between July 2005 and January 2007, but continued to have regular checkups with Dr. Malatinsky and other FCI-Milan staff, and complained about his ankle and shoulder condition at least eight different times. (*See* R. 58-18 at 5-8; R. 58-21). When Plaintiff indicated that his pain was worsening, he was offered conservative treatments like pain relievers, a hot compress, a walking cane, and soft shoes. (R. 58-18 at 6, 8, 10). However, when Plaintiff requested surgery authorization at various times, Dr. Malatinsky again told Plaintiff that he would refer him for additional orthopedic consultations if he achieved better management of his diabetes. (*Id.* at 5-10).

### D.  Legal Action

On February 5th 2007, Plaintiff filed an administrative complaint with the BOP,

4

seeking damages in connection with Dr. Malatinsky's refusal to authorize orthopedic surgery on his shoulder or ankle. (R. 58-1). The BOP denied Plaintiff's claim on May 11, 2007. (R. 58-2). Plaintiff also wrote to United States Senator Carl Levin, pleading for the Senator to intervene and help him obtain medical treatment. Senator Levin contacted the BOP Director on May 18, 2007, asking that Plaintiff's medical concerns be reviewed. FCI-Milan's warden, C. Eichenlaub, responded to the Senator's letter on May 23, 2007, stating that Plaintiff had "been seen by staff physicians and an outside orthopedic specialist on several occasions," but that "[d]ue to his young age and the stage of the disease, surgery was not warranted at this time." (R. 57-8).

On October 24, 2007, Plaintiff commenced this lawsuit, seeking damages under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, and the Eighth Amendment. Plaintiff's *pro se* complaint argued that Dr. Malatinsky committed medical malpractice when he blocked Plaintiff from receiving orthopedic surgery and discussing his treatment options with orthopedic surgeons. (R. 58-3 at 3-5). In addition, Plaintiff argued that Warden Eichenlaub negligently failed to ensure that Plaintiff receive necessary medical treatment, and tortiously misrepresented his medical treatment history to Senator Levin. (*Id.*). Plaintiff sought $1 million dollars in damages from the United States, and Dr. Malatinsky and Warden Eichenlaub in their individual capacities. (*Id.* at 5-6).

On July 23, 2008, Plaintiff's case was referred to a magistrate judge for a report and recommendation ("R&R") and pretrial proceedings. On August 12, 2008, the magistrate recommended that Plaintiff's Eighth Amendment and *Bivens* claims be dismissed because Plaintiff failed to establish that Warren Eichenlaub and Dr. Malatinsky were deliberately indifferent as required to establish a constitutional violation. (R. 6 at 4-6). This R&R was

adopted over Plaintiff's objection on October 22, 2008. (R. 15). The Court noted: "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claim which sound in state tort law." (*Id.* at 5 (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (internal citations omitted)). However, Plaintiff was allowed to proceed with his FTCA claim against the United States, which had been substituted in as a defendant pursuant to 28 U.S.C. § 2579(d). (*Id.*) Plaintiff was also assigned pro-bono counsel and granted leave to retain expert witnesses.

On February 24, 2010, while suit was pending, Dr. Sidhu evaluated Plaintiff's shoulder. Dr. Sidhu noted that he last saw Plaintiff in 2005, and concluded that Plaintiff now had severe arthritis in his shoulder that warranted an immediate surgical referral. (R. 58-25). On May 25, 2010, Dr. Malatinsky gave Plaintiff the requested shoulder referral, and Plaintiff was briefly examined by orthopedic surgeon Dr. John K. Anderson. (*Id.*). Plaintiff's appointment with Dr. Anderson lasted approximately five minutes, and did not include a discussion of the risks or benefits of surgery, surgical treatment options, or the impact of diabetes or age. (R. 63 at 2). Dr. Anderson diagnosed Plaintiff with end-stage glenohumeral arthritis, but concluded "[a]t the present time he is not a candidate for a shoulder replacement." (R. 58-25). Dr. Anderson recommended continued conservative treatment for Plaintiff's pain symptoms. (*Id.*)

On August 15, 2010, six years after Dr. Sidhu made his initial recommendation regarding Plaintiff's ankle, Dr. Malatinsky granted Plaintiff a surgical referral for his ankle. Dr. Malatinsky says of the delay: "while Dr. Sidhu recommended that Moore [Plaintiff] be seen by another orthopedist for the possibility of ankle fusion [in July 2004], I did not

6

immediately pursue that referral because of Moore's uncontrolled diabetes. It was my professional opinion that control of his diabetes was crucial prior to referring him for an elective surgery for a problem that has no major impact on his ADLs [activities of daily living]." (R. 58-18 at 14).

In August 2010, satisfied with Plaintiff's diabetes management, Dr. Malatinsky referred Plaintiff to Dr. Anderson for an ankle evaluation. This encounter lasted approximately 5 minutes. Without conducting a physical exam, Dr. Anderson informed Plaintiff that there was "nothing I can do for your ankle, so we might as well leave it as it is." (R. 63 at 2). In an evaluation letter addressed to Dr. Malatinsky, Dr. Anderson diagnosed Plaintiff with end stage osteoarthritis; he did not provide any treatment recommendations. (R. 60-12 at 2).

This matter is before the Court on cross-motions for summary judgment. Plaintiff moves for summary judgment on his FTCA claims, alleging that there are no material disputes of fact and that he is entitled to judgment as a matter of law. (R. 57). The United States, substituted as a defendant pursuant to 28 U.S.C. § 2579(d), filed a cross-motion for summary judgment.

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when, viewing the evidence and all reasonable inferences in the light most favorable to the non moving party, a case is so one-sided that there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The mere allegation that a factual dispute exists will not defeat

a summary judgment motion that is properly supported by the record. *See Anderson*, 477 U.S. at 247-48 ("the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original); *see also La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010) (requiring more than a "scintilla" of evidence). Instead, parties challenging a motion for summary judgment on factual grounds must (1) "cit[e] to particular parts of materials in the record," Fed. R. Civ. P. R. 56(c)(1)(A); (2) demonstrate that record evidence does not support the adverse party's position, *id.* R. 56(c)(1)(B); or (3) show that the "adverse party cannot produce admissible evidence" to support the facts alleged. *Id.*

Where, as here, the litigants file cross-motions for summary judgment, this Court reviews each motion for its own merit. *See, e.g., La Quinta Corp.*, 603 F.3d at 335; *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004).

### B. Defendant's Arguments in Support of Summary Judgment

#### 1. Administrative Exhaustion under FTCA

The FTCA waives the sovereign immunity of the United States with respect to tort actions; the United States may then be held liable as a private individual would under the laws of the state where an injury allegedly occurred. *See* 28 U.S.C. § 1346(b)(1); *United States v. Cundiff,* 555 F.3d 200, 217 (6th Cir. 2009). However, a number of conditions attach to FTCA claims; one is the requirement that plaintiffs administratively exhaust claims before the relevant federal agency. 28 U.S.C. § 2675(a).

Defendant argues that Plaintiff's suit is barred, in part, because he failed to exhaust some claims. (R. 58 at 8). Because FTCA exhaustion is viewed as jurisdictional in this Circuit, *see Blakely v. United States*, 276 F.3d 853, 864-65 (6th Cir. 2002), this Court construes Defendant's argument as a motion to dismiss rather than a motion for summary

judgment. *See id.* at 864; *see also Aurslanian v. Herman*, 181 F.3d 99, 1999 WL 282686, at *1 (6th Cir. April 28, 1999) (table) (noting that claims must be dismissed if plaintiffs fail to exhaust).

Administrative exhaustion under FTCA occurs when a plaintiff (1) presents a claim for review by the appropriate federal agency within two years of the accrual of the claim and (2) the claim is denied. *See McNeil v. United States*, 508 U.S. 106, 111 (1993); *see also Blakely,* 276 F.3d at 864 (citing 28 U.S.C. § 2675(a)); *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991). To present a claim, a plaintiff need not allege specific legal theories or grounds of relief; instead, a claim is properly presented "if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir. 1981) (citing *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980)); *see also Conn v. United States*, 867 F.2d 916, 918-19 (6th Cir. 1989); 28 C.F.R. § 14.2(a)). Any cause of action that is "fairly implicit in the facts" is one that is properly presented for purposes of exhaustion. *Palay v. United States*, 349 F.3d 418, 426 (7th Cir. 2003) (internal citations and quotation marks omitted). After close inspection, this Court concludes that only some of Plaintiff's claims are properly exhausted.

First, Plaintiff says Dr. Malatinsky engaged in malpractice by refusing to authorize orthopedic surgery on his shoulder and ankle during his period of incarceration at FCI-Milan. (*See generally* R. 57). This claim was directly raised in Plaintiff's administrative complaint to the BOP, filed February 5, 2007, which alleged:

> On the time and date specified I was denied critical medical attention by Dr. Malatinsky, while he was acting within the scope of his employment as a doctor employed by the Federal Bureau of Prisons. I have documented surgical needs for

9

> my left shoulder and right ankle. Both my shoulder and ankle require immediate surgery. I am in constant pain. The doctor's failure to grant me surgery allows me compensation under 28 CFR Part 14.

(R. 58-1). Although Plaintiff provides January 18, 2007 as his date of claim, Plaintiff's complaint makes clear that he was alleging a pattern of injury and neglect, and informed the agency that it should investigate Plaintiff's medical records and medical treatment file. Therefore, Plaintiff's first claim is properly exhausted. See *Douglas*, 658 F.2d at 447-48.

Second, Plaintiff alleges that Dr. Malatinsky committed malpractice when he refused to refer Plaintiff for a consultation with an outside orthopedic surgeon. (R. 57 at 13-17). An appointment to discuss surgical treatment options is a prerequisite to receiving surgical care, and Plaintiff's statement that Dr. Malatinsky improperly denied surgical care for his shoulder and ankle provided the BOP sufficient notice to permit an investigation into the care and treatment Plaintiff received at FCI-Milan, up to and including whether Plaintiff had ever received a surgical consultation. Accordingly, this claim is exhausted; it was fairly implied by Plaintiff's administrative complaint.

Third, Plaintiff alleges that Dr. Malatinsky breached the applicable standard of care by failing to: (1) disclose that he lacked the necessary qualifications to assess Plaintiff's candidacy for surgery, and (2) provide him with accurate information concerning possible benefits and risks of orthopedic surgery. (R. 57 at 15). Plaintiff's administrative complaint impliedly raises this claim because it concerns the same set of facts. See *Palay*, 349 F.3d at 425-26. Both Plaintiff's court filing and administrative complaint speak to Dr. Malatinsky's failure to provide Plaintiff proper medical care and attention with respect to his shoulder and ankle, and his failure to authorize orthopedic surgery when it was medically warranted. Therefore, this claim is exhausted.

10

Next, Plaintiff alleges that Dr. Malatinsky committed ordinary negligence by relying on outdated medical records and consultation reports when he decided Plaintiff was not a candidate for orthopedic surgery. (R. 57 at 18). The crux of this claim is that Dr. Malatinsky overlooked Dr. Sidhu's recommendation in October 2004 when discussing surgical referrals with Plaintiff, and that by doing so, Dr. Malatinsky negligently failed to "maintain Plaintiff's medical records in an organized fashion." (*Id.* at 19). This claim is separate and distinct from Plaintiff's claims regarding inadequate medical treatment, and relates more to record-keeping practices at FCI-Milan than Dr. Malatinsky's ultimate treatment decisions. Therefore, this claim is not fairly implied by Plaintiff's administrative complaint, and is dismissed without prejudice for failure to exhaust. See *Aurslanian*, 1999 WL 282686, at *1 (stating that unexhausted FTCA claims must be dismissed without prejudice since the court lacks jurisdiction).

Finally, Plaintiff seeks damages on grounds that Warden Eichenlaub blocked Plaintiff's access to adequate medical care, tortiously misrepresented his medical history, and failed to conduct a proper investigation while responding to Senator Levin's May 2007 inquiry concerning Plaintiff's treatment and care. (R. 57 at 19; R. 58-3 at 3-4).

These allegations are separate from the claims Plaintiff raised in his administrative complaint, and concern a different set of operative facts. Plaintiff's administrative complaint does not provide a "legally sophisticated reader" with notice of any investigation and misrepresentation claims, or that Warden Eichenlaub's conduct was considered an independent source of injury. *Palay*, 349 F.3d at 426 (providing notice standard). Because FTCA plaintiffs cannot "present one claim to the agency and then maintain suit on the basis of a different set of facts," *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991)

11

(internal citations omitted), Plaintiff's final claims were not properly exhausted and are dismissed without prejudice. See *Aurslanian,* 1999 WL 282686, at *1.

### 2. Statute of Limitations

A two-year statute of limitations applies to FTCA claims, and federal law governs when a claim accrues. See *Chomic v. United States,* 377 F.3d 607, 610-11 (6th Cir. 2004). Under the discovery rule announced in *United States v. Kubrick,* 444 U.S. 111 (1979), the statute of limitations on malpractice claims accrues when plaintiffs learn of both the existence and the cause of injury. *Id.* at 123. Defendant says Plaintiff's lawsuit is time-barred with respect to all claims arising before February 5, 2005, which is two years to the date that Plaintiff filed his FTCA administrative claim. Plaintiff responds that all claims relating to the medical treatment he received between July 29, 2004 and February 5, 2007 are timely under the continuing treatment doctrine articulated by *Wehrman v. United States,* 830 F.2d 1480, 1483 (8th Cir. 1987). (R. 59 at 5-6). This Court agrees.

Pursuant to *Wehrman*, a FTCA malpractice claim does not accrue against a plaintiff's regular health care provider "until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." *Wehrman,* 830 F.2d at 1483. The rationale behind *Wehrman* is that patients place trust and confidence in their physicians, which may delay efforts to sue; patients compromise their own interests if the statute of limitations forces them to sue physicians who are still administering treatment; and, patients should not be forced to interrupt corrective treatments from their physicians to begin litigation. See *id.* at 1485; *Ulrich v. Veterans Admin. Hosp.,* 853 F.2d 1078, 1080-81 (2d Cir. 1998).

While *Wehrman* is not controlling authority in this Circuit, the Court of Appeals for the

Sixth Circuit cites *Wehrman* with approval. *See Riffle v. U.S. Veterans Admin*, 869 F.2d 1492, 1989 WL 16146, at *1 (6th Cir. Feb. 13, 1989) (table) (discussing FTCA malpractice claims). Because Plaintiff alleges that Dr. Malatinsky continually denied him adequate health care since his arrival at FCI-Milan, the continuing treatment doctrine applies and Plaintiff's claims are timely.

Plaintiff's claims are also timely under the doctrine of continuing violations, which applies where "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (internal citations omitted); *see also Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009).

The continuing violations doctrine "is rooted in general principles of common law and is independent of any specific action." *Hensley*, 557 F.3d at 697. Accordingly, while it traditionally tolls the statute of limitations in Title VII cases, the continuing violations doctrine applies equally to other civil rights claims. *See Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, --- F.3d ----, 2011 WL 2449000 (6th Cir. June 21, 2011) (fair representation claims); *Bell v. Ohio State Univ.*, 351 F.3d 240 (6th Cir. 2003) (Section 1981 claims); *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934 (6th Cir. 1999) (Section 1983 claims); *Sherman v. Chrysler Corp.*, 47 F. App'x 716 (6th Cir. 2002) (ADEA claims); *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997 (6th Cir. 1994) (fair representation claims). *See also Ellis v. Vadlamundi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008) (applying the continuing violations doctrine to prisoner's chronic denial of health care claims).

To qualify for tolling under the continuing violations doctrine, plaintiffs must demonstrate either (1) "prior [wrongful] activity that continues into the present" or (2) "a longstanding and demonstrable policy" of unlawful conduct. *Bowerman*, 2011 WL 2449000, at *4. In practice these exceptions are quite narrow. Plaintiffs are not eligible for "category one" tolling where the alleged misconduct is discrete or individually actionable. *Id.*; *see also Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) (holding that *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) foreclosed such claims). "Category two" tolling is also barred unless plaintiffs can "demonstrate something more than the existence of [unlawful] treatment in [their] case." *Sharpe*, 319 F.3d at 268 (internal citations omitted). This includes evidence that the unlawful conduct is a "standard operating procedure," *id.* at 269, or a "continuing over-arching policy." *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 408 (6th Cir. 1999) (internal citations omitted).

Although Plaintiff has not alleged that FCI-Milan had a standard operating procedure or over-arching policy to deny health care to inmates, as required under category two, *id.*, he has demonstrated nonetheless that the continuing violations doctrine applies. First, Plaintiff says Defendant denied him appropriate medical care pursuant to "a continuous chain of tortious activity," for which "no single incident . . . can fairly or realistically be identified as the cause of harm in this case." (R. 59 at 6). The misconduct alleged includes ignoring the recommendations of consulting doctors that Plaintiff be given orthopedic referrals; denying Plaintiff's requests for surgery and failing to provide meaningful health care for his shoulder and ankle; and, misinforming Plaintiff about how diabetes impacted Plaintiff's surgical treatment options.

Because Plaintiff alleges that FCI-Milan employees continuously failed to treat his

14

chronic medical needs, Plaintiff states a claim sufficient to warrant tolling under the continuing violations doctrine; his claims are timely. See *Ellis,* 568 F. Supp. 2d at 785 (tolling under the continuing violations doctrine where defendants neglected to properly treat a prisoner's chronic illness).

### 3. Res Judicata

Finally, Defendant argues that partial summary judgment is proper because res judicata bars some of Plaintiff's claims. "Pursuant to the doctrine of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Bragg v. Flint Bd. of Educ.,* 570 F.3d 775, 776 (6th Cir. 2009) (citing *Montana v. United States,* 440 U.S. 147, 153 (1979)) (internal quotation marks omitted).

Res judicata applies where (1) a court reaches a final decision on the merits; (2) the subsequent action involves the same parties or their privies; (3) the issues raised in the subsequent action were litigated in the prior action or could have been litigated; and (4) there is an identity in the causes of action. See *Bragg,* 570 F.3d at 776.

Defendant says Plaintiff's 2004 lawsuit concerning the care and treatment he received at FCI-Pekin bars the current action because it was a suit against federal employees in which FTCA claims could have been raised. (R. 58 at 13-14). This argument lacks merit. "[R]es judicata does not apply to claims that were not ripe at the time of the first suit," *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 530 (6th Cir. 2006), and it does not require plaintiffs to amend their pleadings to include claims that arise after their initial complaint was filed. *Id.* Plaintiff's current lawsuit only concerns the care and treatment he received at FCI-Milan after July 28, 2004, the date that his prior lawsuit was filed. These are factually distinct claims that could not have been litigated before. (R. 59 at 7-8).

Accordingly, the elements of res judicata have not been met; Plaintiff's action may proceed.

### C.  Plaintiff's Arguments in Support of Summary Judgment

#### 1.  Malpractice Claims

Plaintiff and Defendant each petition for summary judgment on the substantive issue of whether Dr. Malatinsky committed medical malpractice and/or negligence. Michigan law governs, and to prevail on a medical malpractice claim, plaintiffs must show: (1) the applicable standard of care, (2) breach of that standard by defendant during the course of the professional relationship, (3) injury, and (4) proximate causation between the breach and the injury. *See, e.g., Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 308 (Mich. 2004); *Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 464-65 (Mich. 1999). Expert testimony is generally required. *See Woodard v. Custer*, 702 N.W.2d 522, 525 (Mich. 2005).

Plaintiff says summary judgment is proper because Dr. Malatinsky breached his duty of care by failing to provide Plaintiff with a timely referral to an orthopedic surgeon, and failing to disclose the possible benefits of pursuing specialist medical treatment. Plaintiff relies on *Morgan v. Engles*, 127 N.W.2d 382, 383 (Mich. 1964), which held that doctors who lack knowledge or training in an area have a duty to inform their patients "of the possibility or probability of better results" by (1) seeing a specialist, or (2) exploring methods of treatment that the physician herself "is not qualified to give." *Id.*

Plaintiff also relies on the testimony of two expert witnesses: Dr. Elliot D. Felman, a board certified family practice physician, and Dr. Alexander Moskwa Jr., a board certified orthopedic surgeon. Plaintiff's experts assert that (1) as a family practice doctor, Dr. Malatinsky was not qualified to evaluate Plaintiff's candidacy for orthopedic surgery or his surgical treatment options; and (2) under the relevant standard of care, Dr. Malatinsky had

a duty to refer Plaintiff to a specialist who could properly evaluate his surgical needs. (R. 57-9 at 2-3).

Plaintiff says the delay in surgical consultations caused him substantial harm. Plaintiff presents expert testimony that his ankle and shoulder joints have markedly deteriorated since his arrival at FCI-Milan; that he experiences continued pain and anguish; that his diabetes has never posed a bar to orthopedic surgery; and, that surgery would relieve most if not all of his symptoms. (*See* R. 57-9; R. 57-10; R. 57-11). Plaintiff's experts also assert that given the severity of Plaintiff's DJD, surgery on both his shoulder and ankle would have been proper as early as 2004. (R. 57-9 at 2-3; R 57-11 at 5).

Defendant does not challenge the applicable standard of care; instead, Defendant argues that Plaintiff cannot demonstrate breach, injury, or proximate causation, relying in part on expert testimony from family practice doctor Anthony C. Munaco. With respect to breach, Defendant argues that Dr. Malatinsky properly cared for Plaintiff's shoulder because between 2004 and 2007, no orthopedic specialists were of the opinion that Plaintiff was old enough for a surgical consultation for his shoulder. (R. 58 at 11). Defendant also argues that Dr. Malatinsky made a reasonable professional judgment when he failed to provide Plaintiff with a surgical consultation for his ankle, due to concerns about Plaintiff's diabetes and the complications that may arise. (*Id.* at 11-12). Finally, Defendant argues that no affirmative disclosures regarding specialist treatment were needed because, although Dr. Malatinsky was not an orthopedic surgeon, treatment of DJD symptoms was not beyond Dr. Malatinsky's skill, competency, or knowledge. (R. 60 at 14-15).

Defendant argues that Plaintiff suffered no harm because he finally received a referral to Dr. Anderson, an orthopedic surgeon, in 2010, and Dr. Anderson opined that no further

17

treatment was needed. (*Id.* at 13). Defendant says Plaintiff cannot establish he has been injured, and that the delayed referral and the denial of surgery cannot be the proximate cause of Plaintiff's ongoing pain. (*Id.*).

While it is significant that Dr. Anderson says Plaintiff is not a candidate for ankle or shoulder surgery, Plaintiff's experts provide lengthy testimony that is directly contradictory. (*See* R. 57-9; R. 57-10; R. 57-11). Even Dr. Munaco, Defendant's medical expert, appears to concede that Plaintiff is now in a position where orthopedic surgery is necessary; Dr. Munaco says in evaluation notes, "I also believe that it is now appropriate to proceed with further orthopedic consultation and preparation for surgery. . . . further delay will not likely decrease the risks and will possibly increase risk as Mr. Moore ages or develops new medical problems." (*See* R. 57-12, Munaco Ltr. at 3). These conflicting statements raise genuine questions of fact regarding breach, injury, and causation.

Since both parties marshal expert testimony and other evidence which support their respective positions, the Court finds that material issues of fact preclude summary judgment on Plaintiff's medical malpractice claims.

## IV. CONCLUSION

This Court **DISMISSES** without prejudice Plaintiff's claims regarding (1) Dr. Malatinsky's record-keeping and (2) Warden Eichenlaub's alleged misconduct.

This Court **DENIES** the parties' cross-motions for summary judgment regarding alleged medical malpractice by Dr. Malatinsky. Plaintiff's claims that Dr. Malatinsky improperly failed to (1) disclose that he was not qualified to evaluate Plaintiff's need for orthopedic surgery; (2) provide Plaintiff with a timely surgical referral; and (3) authorize orthopedic surgery on Plaintiff's shoulder and ankle shall proceed to trial.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 12, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record and Curtis Ellison by electronic means or U.S. Mail on August 12, 2011.

s/Linda Vertriest
Deputy Clerk